**No. 21 - 71351**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

IN RE JASON FENTY, ET. AL., AND PUENTE HUMAN RIGHTS MOVEMENT

*Petitioners,*

v.

UNITED STATES DISTRICT COURT, DISTRICT OF ARIZONA,

*Respondent,*

SHERIFF PAUL PENZONE, IN HIS OFFICIAL CAPACITY, AND
MARICOPA COUNTY, A MUNICIPAL ENTITY,

*Real Parties in Interest.*

On Petition for a Writ of Mandamus to the United States District Court for the District of Arizona (No. 2:20-cv-01192-SPL-JZB)

---

**REPLY IN SUPPORT OF PETITION FOR WRIT OF MANDAMUS**

---


David C. Fathi *
ACLU NATIONAL PRISON PROJECT
915 15th Street, NW, 7th Floor
Washington, DC 20005
(202) 548-6610

* Not admitted in DC; practice limited to federal courts

Corene T. Kendrick
Kyle A. Virgien
ACLU NATIONAL PRISON PROJECT
39 Drumm St.
San Francisco, CA 94111
(202) 548-6610

Jared G. Keenan
Victoria Lopez
ACLU FOUNDATION OF ARIZONA
P.O. Box 17148
Phoenix, AZ 85011

Larry Wulkan
ZWILLINGER WULKAN PLC
2020 North Central Avenue, Suite 675
Phoenix, AZ 85004
(602) 962-0089

*Attorneys for Petitioners*

# TABLE OF CONTENTS

**Page**


INTRODUCTION .......... 1

I. THE DISTRICT COURT CLEARLY ERRED WHEN IT SHIFTED DISCOVERY COSTS ONTO INDIGENT CIVIL RIGHTS PLAINTIFFS. .......... 3

A. The District Court's Supplemental Order and the Jail's Answer Conflate the Question Whether to Permit Discovery with the Question Whether to Shift Costs. .......... 4

C. At a Minimum, the Court Should Apply Its Rule 54(d)(1) Cost-Shifting Precedent and Find Clear Error in the District Court's Failure to Consider Petitioners' Indigency and the Chilling Effect of its Order. .......... 7

D. The Court Should Make Clear that the Zubulake Standard Governs Cost-Shifting. .......... 10

i. The Zubulake Standard Governs Cost-Shifting Under Rule 26(c). .......... 10

ii. The Zubulake Analysis Compels a Finding of Clear Error. .......... 14

II. PETITIONERS HAVE NO OTHER ADEQUATE MEANS TO ATTAIN RELIEF AND WILL BE DAMAGED OR PREJUDICED IN A WAY NOT CORRECTABLE ON APPEAL. .......... 14

III. THE DISTRICT COURT'S ORDER RAISES NEW AND IMPORTANT PROBLEMS AND ISSUES OF FIRST IMPRESSION. .......... 17

CONCLUSION .......... 17

CERTIFICATE OF COMPLIANCE .......... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Ariz.*,
881 F.2d 1486 (9th Cir. 1989) .......... 14

*Bauman v. U.S. Dist. Ct.*,
557 F.2d 650 (9th Cir. 1977) .......... 3, 16, 17

*United States ex rel. Carter v. Bridgepoint Educ., Inc.*,
305 F.R.D. 225 (S.D. Cal. 2015) .......... 12

*Cole v. U.S. Dist. Ct. for Dist. of Idaho*,
366 F.3d 813 (9th Cir. 2004) .......... 3

*Draper v. Rosario*,
836 F.3d 1072 (9th Cir. 2016) .......... 16

*Graves v. Arpaio*,
623 F.3d 1043 (9th Cir. 2010) .......... 16

*United States ex rel. Guardiola v. Renown Health*,
No. 3:12-CV-00295-LRH, 2015 WL 5056726 (D. Nev. Aug. 25, 2015) .......... 8, 11

*Jeff D. v. Otter*,
643 F.3d 278 (9th Cir. 2011) .......... 8

*John B. v. Goetz*,
879 F. Supp. 2d 787 (M.D. Tenn. 2010) .......... 2

*Medhekar v. United States Dist. Ct.*,
99 F.3d 325 (9th Cir.1996) .......... 15

*Melendres v. Arpaio*,
784 F.3d 1254 (9th Cir. 2015) .......... 16

*Merle Norman Cosms., Inc. v. U.S. Dist. Ct., C.D. of Cal.*,
856 F.2d 98 (9th Cir.1988) .......... 3

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978)....................................................................10, 11, 13

*Perry v. Schwarzenegger*,
591 F.3d 1147 (9th Cir. 2010) ..................................................................3, 16, 17

*Proctor & Gamble Co. v. S.C. Johnson & Son*,
No. 9:08-CV-143, 2009 WL 440543 (E.D. Tex. Feb. 19, 2009) .......................12

*Ramirez v. Ghilotti Bros.*,
No. C 12-4590, 2013 U.S. Dist. LEXIS 103839 (N.D. Cal. Jul. 24,
2013) .....................................................................................................12

*SG Cowen Sec. Corp. v. U.S. Dist. Ct. for N. Dist. of CA*,
189 F.3d 909 (9th Cir. 1999) .........................................................................15

*Shapiro v. Rynek*,
250 F. Supp. 3d 775 (D. Colo. 2017)....................................................................3

*Stanley v. Univ. of S. Cal.*,
178 F.3d 1069 (9th Cir. 1999) ..................................................................1, 7, 9, 16

*Tedder v. Odel*,
890 F.2d 210 (9th Cir. 1989) ..........................................................................7

*Zubulake v. UBS Warburg LLC*,
216 F.R.D. 280 (S.D.N.Y. 2003) (*Zubulake II*).................................................12

*Zubulake v. UBS Warburg LLC*,
217 F.R.D. 309 (S.D.N.Y. 2003) (*Zubulake I*) ...........................................*passim*

**Statutes**

28 U.S.C. § 1291 .....................................................................................14

28 U.S.C. § 1915(b) .....................................................................................15

**Other Authorities**

Fed. R. Civ. P. 26(b) .........................................................................*passim*

Fed. R. Civ. P. 26(b)(1)..........................................................................2, 4, 6

Fed. R. Civ. P. 26(b)(2)(iii)...........................................................................11

Fed. R. Civ. P. 26(b)(2)(B) ....................................................................10, 11

Fed. R. Civ. P. 26(b)(2)(C) ......................................................................5, 13

Fed. R. Civ. P. 26(c)...........................................................................*passim*

Fed. R. Civ. P. 26(c)(1)(B) ...............................................................4, 7, 10, 13

Fed. R. Civ. P. 54(d)(1).......................................................................4, 7, 10, 17

Lauren Castle, *Federal lawsuit filed against Maricopa County for treatment of inmates during COVID-19*, Arizona Republic (June 16, 2020), https://www.azcentral.com/story/news/local/arizona-health/2020/06/16/coronavirus-pandemic-maricopa-county-sued-inmates-treatment-covid-19/3201788001/..........................................................16

Sedona Conference, *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production* ......................................................................4

## INTRODUCTION

Petitioners are several indigent, incarcerated named plaintiffs and a small, grass-roots non-profit. They bravely filed a class action suit to protect their community members incarcerated in the Maricopa County Jail from the jail's defective response to the COVID-19 pandemic. The district court punished them for that selfless act by shifting onto them the government's routine discovery costs. In shifting these costs, the district court has consistently refused to consider Petitioners' indigency or the chilling effect that its order will have on potential plaintiffs and attorneys considering bringing civil rights suits in the future. This refusal clearly errs under this Court's precedent. *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1079 (9th Cir. 1999) ("[T]he district court abused its discretion [by shifting costs], particularly based on the district court's failure to consider two factors: [the Plaintiff's] indigency, and the chilling effect of imposing such high costs on future civil rights litigants."). Even after this Court provided the district court with the opportunity to respond to this petition, the district court filed a Supplemental Order that still made no mention whatsoever of Petitioners' indigency, this chilling effect, or the appropriate legal analysis. Doc. 7 ("Suppl. Order").

The Jail attempts to relitigate the district court's determination under Rule 26(b) that required threading in the first place, which is not at issue on appeal.[1] It argues that this threading "was 'unreasonably cumulative or duplicative,'" not "proportional to the needs of the case," and an effort to obtain discovery that could

---

[1] Petitioners refer to Real Parties in Interest Maricopa County and its Sheriff, Paul Penzone, as the "Jail."

have been "obtained from some other source that is more convenient, less burdensome, or less expensive." Doc. 8 ("Answer") at 20-21 (quoting Fed. R. Civ. P. 26(b)(1); (b)(2)(C)(i)). But this simply rehashes the arguments the magistrate judge rejected in his initial determination under Rule 26(b) to "order the threading." *See* Pet. Ex. 3 at 15:20-16:5 (disagreeing with the Jail's arguments against threading).[2]

The Jail also attempts to impugn petitioners' counsel's "motive for pursuing a writ of mandamus" because in its view, petitioners' counsel should have opted to pay the discovery cost themselves rather than preparing the petition. Answer at 2. This ad hominem attack misses the mark. Petitioners' counsel at the ACLU and its partner *pro bono* law firms are dedicated to protecting people's ability to assert their civil liberties and rights, regardless of these individuals' ability to pay for costly litigation. They challenge the district court's erroneous ruling because it has the effect of chilling indigent civil rights plaintiffs from bringing suit and *pro bono* counsel from representing those indigent plaintiffs. *See* Doc. 5-2 (Amicus Brief of National Police Accountability Project). Petitioners' counsel's "motive" in bringing this petition is to protect both their current clients and other indigent people who in the future suffer civil-rights abuses—hardly a sinister endeavor.

To shift costs from a well-financed government entity to indigent civil rights plaintiffs is—in the words of district courts that have considered the issue—"outrageous," *John B. v. Goetz*, 879 F. Supp. 2d 787, 887 (M.D. Tenn. 2010), and

[2] "Pet. Ex." and "Answer Ex." refer to exhibits to the Petition (Doc. 1-2) and Answer (Doc. 8), respectively.

"manifestly unjust," *Shapiro v. Rynek*, 250 F. Supp. 3d 775, 781 (D. Colo. 2017). This Court should grant mandamus relief to correct this clear error.

**DISCUSSION**

Five criteria, first set out in *Bauman v. U.S. Dist. Ct.*, 557 F.2d 650, 654-55 (9th Cir. 1977), inform whether to grant mandamus relief:

> whether (1) the party seeking the writ has no other means, such as a direct appeal, of attaining the desired relief, (2) the petitioner will be damaged in a way not correctable on appeal, (3) the district court's order is clearly erroneous as a matter of law, (4) the order is an oft-repeated error, or manifests a persistent disregard of the federal rules, and (5) the order raises new and important problems, or issues of law of first impression.

*Cole v. U.S. Dist. Ct. for Dist. of Idaho*, 366 F.3d 813, 817 (9th Cir. 2004); *see also* Answer at 10-11. Four of the five *Bauman* criteria weigh in favor of issuing a writ of mandamus.

## I. THE DISTRICT COURT CLEARLY ERRED WHEN IT SHIFTED DISCOVERY COSTS ONTO INDIGENT CIVIL RIGHTS PLAINTIFFS.

The third *Bauman* criterion—clear error—is "highly significant" in the mandamus determination. *Cole*, 366 F.3d at 820 (quoting *Merle Norman Cosms., Inc. v. U.S. Dist. Ct., C.D. of Cal.*, 856 F.2d 98, 100 (9th Cir.1988)).[3] The district

---

[3] The Jail argues that the district court did not clearly err because its error violated only persuasive—not binding—authority. Answer at 16. This argument misstates the mandamus standard. This Court may find clear error even when there is no binding precedent by this Court. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1159 (9th Cir. 2010) ("[T]he very existence of the fifth *Bauman* factor, whether the issue presented is one of first impression[,] illustrate[s that] the necessary 'clear error' factor does not require that the issue be one as to which there is established precedent."). The Jail is also wrong that no precedent binds the district court. The

court clearly erred by shifting costs without a proper analysis under Rule 26(c), which governs cost-shifting.

### A. The District Court's Supplemental Order and the Jail's Answer Conflate the Question Whether to Permit Discovery with the Question Whether to Shift Costs.

The district court made two rulings related to threading. First, it resolved a dispute between the parties and ordered the Jail to conduct threading. Pet. Ex. 9 at 1. This order, which is not at issue here, was made under Rule 26(b). *See* Fed. R. Civ. P. 26(b)(1) (defining the permissible "scope of discovery"). Second, the district court *sua sponte* shifted costs for this threading. That issue of cost-shifting is governed by Rule 26(c). Fed. R. Civ. P. 26(c)(1)(B) (permitting protective orders specifying the "allocation of expenses"). It was separate from the determination to require the threading in the first place. *See* The Sedona Conference, *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 190 (2018) ("Allocating the costs of extraordinary ESI discovery efforts [under Rule 26(c)] should not be used as an alternative to sustaining a responding party's objection to undertaking such efforts in the first place [under Rule 26(b)]."). It is this cost-shifting under Rule 26(c) that is at issue here. Both the district court's supplemental order

---

district court clearly erred by ignoring the cost-shifting precedent this Court set out in the context of Rule 54(d)(1), along with Rule 26(c)'s endorsement of the prevailing *Zubulake* test. Pet. at 13-16. Both sources of authority bind the district court.

and the Jail's answer conflate this determination with the question—not at issue here—whether to have ordered the threading in the first place.

At this Court's invitation, the district court issued a supplemental order attempting to support its determination that cost-shifting was proper. This order found the threading at issue "unnecessary and unrelated to the production of" the documents. Suppl. Order at 2. This finding is not relevant to the issue of cost-shifting because it addresses the separate determination whether to order the threading under Rule 26(b). Fed. R. Civ. P. 26(b)(2)(C); 26(b)(2)(C)(i) ("[T]he court must limit the frequency or extent of discovery . . . [that] is unreasonably cumulative or duplicative. . . ."). This finding therefore conflicts with the magistrate judge's decision to order the discovery and with the record evidence on which he based that decision. The magistrate judge established a "goal … to have substantial discovery within a reasonable parameter," which he defined as a production of "between around 8,000 to 10,000 documents." Pet. Ex. 3 at 15:21-23. The Jail had gathered a set of 11,050 documents, before threading, *see* Answer at 7; Answer Ex. 2 at 9, which the parties expected would result in 8,000-10,000 documents after removing privileged documents. The magistrate judge was concerned that this set of documents might overlap so much that they do not contain enough responsive information, stating: "If the threading actually reduces [that set of documents] from 10,000 to 500" because documents consist mostly of replies and forwards of the same emails, "I'd certainly [be] . . . on board with the plaintiff's complaint that they weren't getting much disclosure." Pet. Ex. 3at 11:3-6. He concluded: "I do want to know how many different emails are out there. . . . I am going to order the threading."

*Id.* at 16:4-5. The threading at issue was therefore necessary and related to achieving the production of 8,000-10,000 unique documents that the magistrate judge had ordered.

The district court's supplemental order additionally erred by basing its conclusion on a factual finding that "Defendants had already paid to produce and de-duplicate the responsive emails." Suppl. Order at 1 (citing Dkt. 111, which is in the appellate record at Pet. Ex. 10). The record does not support this finding. Rather, Defendants had reviewed "over 700" of the 11,050 documents and had produced none. Answer Ex. 2 at 12. This factual error is important. The Jail still had the large majority of its document review ahead of it when the threading removed 2,728 documents from the set to review. *Id.* at 12 (reporting that after threading, there remained 8,322 documents of the original 11,050). The district court erroneously ignored this time saving, which weighs against cost-shifting. *See Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 323 (S.D.N.Y. 2003) (*Zubulake I*) ("[I]n the unusual case where [incurring the cost] will also provide a tangible or strategic benefit to the responding party, that fact may weigh *against* shifting costs.").

The Jail makes the same error in its answer, attempting to justify the district court's cost-shifting determination by pointing to language in Rule 26(b) that applies to whether the threading should have been ordered in the first place. The Jail argues that this threading "was 'unreasonably cumulative or duplicative' and in fact 'obtained from some other source that is more convenient, less burdensome, or less expensive,'" and "was also not 'proportional to the needs of the case.'" Answer at 20-21 (quoting Fed. R. Civ. P. 26(b)(1); (b)(2)(C)(i)). But these arguments simply

rehash the arguments the Jail made—and the magistrate judge rejected—in the initial determination under Rule 26(b) to "order the threading." *See* Pet. Ex. 3 at 15:20-16:5 (disagreeing with the Jail's arguments against threading). These arguments are irrelevant to whether costs for that threading should be shifted under Rule 26(c).[4]

### C. At a Minimum, the Court Should Apply Its Rule 54(d)(1) Cost-Shifting Precedent and Find Clear Error in the District Court's Failure to Consider Petitioners' Indigency and the Chilling Effect of its Order.

Petitioners now turn to the question properly before the Court: whether Rule 26(c) permits cost-shifting. Although this Court has not addressed the law of cost-shifting under Rule 26(c), it has set out two elements that a district court must consider before shifting costs under Rule 54(d)(1): "indigency, and the chilling effect of imposing such high costs on future civil rights litigants." *Stanley*, 178 F.3d at 1079. Since Rule 54(d)(1) (which presumes cost-shifting) weighs more heavily toward cost-shifting than does Rule 26(c) (which presumes no cost-shifting), the district court clearly erred by not considering these elements in the context of Rule 26(c).[5] The Jail argues that, since this Court has yet to expressly consider these cost-

---

[4] The Jail makes one argument in passing under 26(c), citing no evidence, that the district court properly shifted costs because Petitioners' requests "sought only to annoy and repress" the Jail. Answer at 21 (citing Fed. R. Civ. P. 26(c)(1)(B)). But the magistrate judge already rejected this exact argument. Pet. Ex. 3 at 12:8 (finding that Petitioners' request for threading was "in good faith").

[5] The Jail sets up a straw-person argument, claiming that "Petitioners essentially take the position that a district court should never shift litigation costs to an indigent plaintiff." Answer at 18. This is not true. Petitioners simply explain that the district court must ***consider*** their indigency and the potential chilling effect on civil-rights claims. The Jail cites *Tedder v. Odel*, 890 F.2d 210 (9th Cir. 1989) for this point, but that opinion holds that mandatory witness fees are not waived for *in forma pauperis* plaintiffs. *Id.* at 211-12. That holding has no bearing on whether the courts

shifting elements in the context of Rule 26(c), the district court was free to ignore them. But district courts in this circuit analyze Rule 26(c) under the *Zubulake* framework, *United States ex rel. Guardiola v. Renown Health*, No. 3:12-CV-00295-LRH, 2015 WL 5056726, at *2 (D. Nev. Aug. 25, 2015), which necessarily involves considerations of both elements. The indigency element is found in *Zubulake*'s fourth factor, which considers "the resources available to each party." *Zubulake I*, 217 F.R.D. at 324. The element of chilling effect on future civil rights litigants is found in *Zubulake*'s sixth factor, which examines "the importance of the issues at stake in the litigation." *Id.*; *see also id.* at 321 ("[P]ublic policy weighs heavily in favor of permitting extensive discovery [without cost-shifting for cases with] the potential for broad public impact."). The Jail's argument that the district court should not have applied this Court's existing cost-shifting law is particularly problematic because neither the Jail nor the district court has ever pointed to any alternate framework governing the cost-shifting determination.[6] This position that district courts should shift costs untethered from any analytical structure is untenable. This Court should therefore, at a minimum, require consideration of indigency and the chilling effect of cost-shifting on future civil rights litigants.

---

must consider indigency and chilling effect before finding the presumption against cost-shifting to be overcome.

[6] The Jail cites one opinion for the proposition that a district court has "wide discretion" to issue a protective order under Rule 26(c). Answer at 18 (citing *Jeff D. v. Otter*, 643 F.3d 278, 289 (9th Cir. 2011 (internal citation omitted)). But in exercising that authority to issue protective orders, courts must follow the relevant legal guideposts. That opinion, for example, held that the district court found good cause because it carefully followed the legal analysis regarding the deliberative-process privilege and made specific factual findings. *Jeff D.*, 643 F.3d at 289-90.

The record below is devoid of any consideration of either of these cost-shifting factors. The magistrate judge rejected Petitioners' attempts to raise indigency and the chilling effect of the court's order, and the district judge provided no substantive analysis of cost-shifting at all. Pet. at 13-14. Since that brief, the district court has accepted this Court's invitation to supplement its order, but it continues to ignore Petitioners' indigency and its order's chilling effect. *See generally* Suppl. Order. The Jail concedes this. Answer at 17-18 (pointing only to a statement by the magistrate judge in arguing the district court considered these elements).

The Jail places much focus on a statement the magistrate judge made at oral argument. Answer at 17-18 (quoting Pet. Ex. 3 at 6:18-19, 7:3-4). But that statement, where the magistrate judge rejected Petitioners' request to submit written briefing on these two elements, and asserted that his ruling was a "one-off" that "won't affect a future case," completely ignores indigency and brushes off Petitioners' concerns about a chilling effect rather than addressing them. The Jail also argues that the district court did not need to consider indigency because the discovery cost was lower than the $46,710.97 cost shifted onto the plaintiff in *Stanley*. Answer at 17 (citing *Stanley*, 178 F.3d at 1079-80). But this argument misstates the holding in *Stanley*, which required the district court to "consider" these elements—a step that the district court never took here. *Stanley*, 178 F.3d at 1079. This argument is also factually wrong. The cost in *Stanley* represented well under a year's salary to the university basketball coach plaintiff. *Stanley*, 178 F.3d at 1072-73 (reciting salary negotiations ranging between a $60,000 and $112,000 annual salary). This is far less than the multiple years an incarcerated person lucky enough to have a 25-cent-per-

hour job would need to work to pay off the discovery cost at issue here. *See* Pet. Exs. 4-5.

The district court failed to consider the two elements that, based on this Court's Rule 54(d)(1) law, it must consider before shifting costs.

### D. The Court Should Make Clear that the *Zubulake* Standard Governs Cost-Shifting.

This Court can best provide guidance to district courts by applying the *Zubulake* standard, which most district courts already apply, consistent with the 2015 amendments to Rule 26(c). Pet. at 14-16.

#### i. The *Zubulake* Standard Governs Cost-Shifting Under Rule 26(c).

Rule 26(c) allows district courts to specify the "allocation of expenses" for discovery "in order to protect a party or person from . . . undue burden or expense." Fed. R. Civ. P. 26(c), 26(c)(1)(B).[7] The Supreme Court recognized this authority under an earlier version of Rule 26(c) when it explained: "the presumption is that the responding party must bear the expense of complying with discovery requests, but he may invoke the district court's discretion under Rule 26(c) to grant orders protecting him from 'undue burden or expense' in doing so, including orders conditioning discovery on the requesting party's payment of the costs of discovery." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978) (quoting Fed. R. Civ. P. 26(c). *Zubulake* applies this proposition from *Oppenheimer Fund* to electronic discovery. *Zubulake I*, 217 F.R.D. at 316 (quoting *Oppenheimer Fund*, 437 U.S. at

[7] Rule 26(b)(2)(B) also governs cost-shifting. But it is limited to cost-shifting of "information [that] is not reasonably accessible" and does not apply here. *See* Fed. R. Civ. P. 26(b)(2)(B).

358). It begins its analysis with the language of Rule 26(c), stating that "cost-shifting should be considered *only* when electronic discovery imposes an 'undue burden or expense' on the responding party." *Zubulake I*, 217 F.R.D. at 318 (quoting Fed. R. Civ. P. 26(c)). *Zubulake* then turns to the proportionality factors of Rule 26(b) (then recited in Rule 26(b)(2)(iii) and currently recited in Rule 26(b)(1)) to define when discovery poses an "undue burden or expense" such that cost-shifting under Rule 26(c) is warranted. *Zubulake I,* 217 F.R.D. at 318 (citing Fed. R. Civ. P. 26(b)(2)(iii)). *Zubulake* has become the "seminal" test for cost-shifting for electronic discovery. *Guardiola*, 2015 WL 5056726, at *2.

The Jail attempts to cabin *Zubulake* to cost-shifting for inaccessible electronic documents under Rule 26(b)(2)(B), arguing that it does not govern the cost-shifting under Rule 26(c) at issue here.[8] Answer at 21-24. But for several reasons, *Zubulake* is not so limited.

***First***, *Zubulake* expressly states that its test applies the authority "under Rule 26(c) to grant orders . . . conditioning discovery on the requesting party's payment of the costs of discovery"—the exact determination at issue here. *Zubulake I,* 217 F.R.D. at 316 (quoting *Oppenheimer Fund,* 437 U.S. at 358).

***Second***, courts regularly apply *Zubulake* to decide cost-shifting under Rule 26(c) just as Petitioners do here. *See* Pet. at 16-25. In fact, at least one court has applied *Zubulake* to reach exactly the same conclusion the district court should have

---

[8] Inaccessible electronic documents are those stored in a way where they must be restored before they can be viewed. *See Zubulake I,* 217 F.R.D. at 320. The parties agree that the documents at issue here are not inaccessible. *See* Answer at 22.

reached here: cost-shifting is inappropriate for post-collection data processing intended to "decrease[] the time and effort counsel must invest in searching and examining documents." *Proctor & Gamble Co. v. S.C. Johnson & Son*, No. 9:08-CV-143, 2009 WL 440543, at *2 (E.D. Tex. Feb. 19, 2009) (citing *Zubulake*).

***Third***, the Jail misinterprets *Zubulake* when it claims that the district court could shift costs for discovery of accessible information without considering the *Zubulake* factors. Answer at 21-23. The *Zubulake* court found that, as a blanket rule, costs related to accessible electronic information could never pose an undue burden that would justify cost-shifting. *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 284 (S.D.N.Y. 2003) (*Zubulake II*) ("It is worth emphasizing again that cost-shifting is potentially appropriate only when *inaccessible* data is sought. When a discovery request seeks accessible data—for example, active on-line or near-line data—it is typically inappropriate to consider cost-shifting."). Since the *Zubulake* opinion, some courts have relaxed that strict requirement so that: "Cost-shifting is considered only when the documents requested are inaccessible ***or otherwise pose an undue burden or expense*** that outweighs the likely benefit of the discovery." *Ramirez v. Ghilotti Bros.*, No. C 12-4590, 2013 U.S. Dist. LEXIS 103839, at *8-9 (N.D. Cal. Jul. 24, 2013) (emphasis added) (internal quotation marks and citation omitted) (finding *Zubulake*'s admonition against cost-shifting for accessible documents to nonetheless bar cost-sharing for a redaction cost that, like the cost at issue here, was incurred as a post-collection processing cost); *see also United States ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 240 (S.D. Cal. 2015) ("As *Zubulake*'s own author has observed, [*Zubulake*] balancing is proper even as to accessible data

so long as the factors set forth in Rule 26(b)(2)(C) [that make up the *Zubulake* test] evidence cost-shifting's suitability.") (citing Shira A. Sheindlin & Daniel J. Capa, Electronic Discovery and Digital Evidence 314 (2009)). But under both the original *Zubulake* test (where costs related to accessible data can never be shifted) and these more lenient versions (where costs related to accessible data can be shifted only when they satisfy the *Zubulake* factors), a court cannot ignore the *Zubulake* factors and shift a cost related to accessible data. The Jail attempts to turn this logic on its head, arguing that costs for accessible data can be shifted even when they do not satisfy the *Zubulake* factors. Answer at 21-23. That interpretation is wrong.

*Fourth*, the Jail is flatly incorrect that the 2015 amendments to Rule 26(c) are somehow negated by the 2006 amendments to Rule 26(b). Answer at 23-24. The Jail is right that the 2006 amendments incorporate one aspect of the *Zubulake* analysis: as part of addressing a request to produce inaccessible electronic information, courts can consider cost-shifting. But the 2015 amendments also incorporate another aspect: they make explicit what *Zubulake* and *Oppenheimer Fund* read into Rule 26(c)—that courts may under certain circumstances shift discovery costs. Fed. R. Civ. P. 26(c)(1)(B) advisory committee's note to 2015 amendment (explaining that this rule amendment made explicit an authority already "included in the [former] rule"); *see also* Pet. at 15-16. The Advisory Committee and Supreme Court's endorsement in 2015 of the prevailing *Zubulake* cost-shifting framework under Rule 26(c) thus has force even though they also endorsed in 2006 another aspect of that framework through a new portion of Rule 26(b).

### ii. The *Zubulake* Analysis Compels a Finding of Clear Error.

The district court clearly erred by reaching a result contrary to the *Zubulake* analysis. *See* Pet. at 16-25. The district court's supplemental order, finding the threading at issue here "unnecessary" and "unrelated to the production of" documents, Suppl. Order at 2, does not alter this conclusion. No *Zubulake* factor considers whether an expense is "unnecessary" or "unrelated to the production of" documents. *See Zubulake I*, 217 F.R.D. at 322 (setting out factors). The supplemental order thus does not consider any *Zubulake* factor—much less all seven as the law requires.

The Jail does not even suggest that the district court considered any factor relevant to the *Zubulake* analysis. Instead, it simply argues that, if the Court holds that *Zubulake* applies, it should remand so that the district court can conduct that analysis. Answer at 24 n.15. But there is no need for such a remand: the record that the parties already put before the district court—and that the district court ignored—demonstrates that every single *Zubulake* factor weighs against cost-shifting. Pet. at 16-25.

## II. PETITIONERS HAVE NO OTHER ADEQUATE MEANS TO ATTAIN RELIEF AND WILL BE DAMAGED OR PREJUDICED IN A WAY NOT CORRECTABLE ON APPEAL.

Mandamus is the only way for Petitioners to challenge the district court's cost-shifting order because such discovery orders "are not final appealable orders under 28 U.S.C. § 1291." *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Ariz.*, 881 F.2d 1486, 1490 (9th Cir. 1989); *see also* Pet. at 25-26. The Jail does not challenge this proposition, instead arguing only that, even though Petitioners cannot directly appeal

this discovery order, they should wait until a final judgment is entered and appeal this order as part of a direct appeal of the final judgment. Answer at 12. The Jail cites no authority for this proposition, which is wrong. "Compliance with a discovery order moots an appeal [after final judgment] of that order." *SG Cowen Sec. Corp. v. U.S. Dist. Ct. for N. Dist. of CA*, 189 F.3d 909, 914 (9th Cir. 1999) (citing *Medhekar v. United States Dist. Ct.*, 99 F.3d 325, 326-27 (9th Cir.1996)). Mandamus thus remains the only practical way for Petitioners to challenge the order.

Mandamus is further necessary because the erroneous discovery order poses immediate harms to Petitioners and other civil rights litigants. The shifted costs represent a serious financial strain for Petitioners and will have a chilling effect on other civil-rights litigants. *See* Pet. at 26-27. The Jail attempts three counters, but all fail.

First, the Jail argues that Petitioners should have responded to the magistrate judge's cost-shifting order by giving up on the threading process that the magistrate judge ordered, thereby avoiding paying the shifted cost. Answer at 12. This argument would improperly force Petitioners to relinquish their rights to relevant discovery and to an appeal of the cost-shifting order simply to avoid the harms of that erroneous order. Second, the Jail argues that, because incarcerated people proceeding *in forma pauperis* may still incur some litigation costs (charged as installment payments under 28 U.S.C. § 1915(b)), Petitioners cannot contend that cost-shifting poses an irreparable harm. Answer at 14. This argument ignores Petitioners' unrebutted factual showing that the cost at issue represents a serious harm. *See* Pet. at 21-22. It also relies on *in forma pauperis* law that does not apply

because no Petitioner is proceeding *in forma pauperis*. Third, the Jail argues that the chilling effect of the district court's imposition of punishing cost-shifting cannot justify mandamus relief because this case lacks the "notoriety" of *Perry v. Schwarzenegger*, a case where this Court has recognized this chilling effect. Answer at 14 n.10 (citing *Perry*, 591 F.3d at 1152, 1158). That argument neglects that *Perry* does not turn on the notoriety of the parties' claims, and it similarly ignores other opinions finding a chilling effect in less well-publicized cases. *See, e.g., Stanley*, 178 F.3d at 1080 (finding cost-shifting "may chill civil rights litigation"); *Draper v. Rosario*, 836 F.3d 1072, 1088-89 (9th Cir. 2016) (finding cost-shifting "could chill similar lawsuits challenging Eighth Amendment violations"). It also neglects that this case has significant visibility to future civil rights litigants. It has received media attention. *E.g.*, Lauren Castle, *Federal lawsuit filed against Maricopa County for treatment of inmates during COVID-19*, Arizona Republic (June 16, 2020), https://www.azcentral.com/story/news/local/arizona-health/2020/06/16/coronavirus-pandemic-maricopa-county-sued-inmates-treatment-covid-19/3201788001/. It also is against the Maricopa County Sheriff's Office, a frequent defendant in landmark civil rights cases that is likely to continue to be a common defendant. *E.g.*, *Melendres v. Arpaio*, 784 F.3d 1254, 1259 (9th Cir. 2015); *Graves v. Arpaio*, 623 F.3d 1043 (9th Cir. 2010).

Mandamus is the only way for Petitioners to challenge the district court's cost-shifting order and to correct the very real, immediate harms that the order causes to them and to the public interest. The first two *Bauman* factors are therefore satisfied.

## III. THE DISTRICT COURT'S ORDER RAISES NEW AND IMPORTANT PROBLEMS AND ISSUES OF FIRST IMPRESSION.

This mandamus petition raises an issue of first impression for this Court: how this Court's existing cost-shifting law under Rule 54(d)(1) and binding authority under Rule 26(c) should be applied to discovery cost-shifting. *See Perry*, 591 F.3d at 1158-59. The Jail cannot contest this, because it argues for purposes of the third *Bauman* factor that this petition raises "a question of first impression." Answer at 16 (citation omitted). This *Bauman* factor thus is undisputedly satisfied.

This factor is also independently satisfied because this petition raises a new and important problem: the chilling effect that the district court's order will have if uncorrected. *Perry*, 591 F.3d at 1158-59 (recognizing that potential chilling effects satisfy this factor). The Jail responds only by repeating its incorrect argument that there is "no prejudice or irreparable harm." Answer at 24. That argument is wrong as explained above. *See supra* at 14-16.

## CONCLUSION

For the reasons set forth in the petition and above, this Court should correct the district court's erroneous decision to shift routine discovery costs onto civil rights litigants of limited means. It should therefore grant this petition for a writ of mandamus.

Dated: December 27, 2021

Respectfully submitted,

*/s/ Kyle A. Virgien*

Corene T. Kendrick
Kyle A. Virgien
ACLU NATIONAL PRISON PROJECT
39 Drumm St.
San Francisco, CA 94111

David C. Fathi
ACLU NATIONAL PRISON PROJECT
915 15th Street, NW, 7th Floor
Washington, DC 20005

Jared G. Keenan
Victoria Lopez
ACLU FOUNDATION OF ARIZONA
P.O. Box 17148
Phoenix, AZ 85011

Larry Wulkan
ZWILLINGER WULKAN PLC
2020 North Central Avenue, Suite 675
Phoenix, AZ 85004

*Attorneys for Petitioners*

## CERTIFICATE OF COMPLIANCE

I am an attorney for Petitioners. This brief contains 4,799 words, excluding the items exempted by Fed. R. App. P. 32(f) and Cir. R. 21-2(c). This brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6). I certify that this brief complies with the word limit of Fed. R. App. P. 21(d)(1).

Date: December 27, 2021

*/s/ Kyle A. Virgien*
Kyle A. Virgien

*Attorney for Petitioners*